State ex rel. Crews v. Parker

THE STATE OF NORTH CAROLINA BY AND THROUGH THE PENDER
COUNTY CHILD SUPPORT ENFORCEMENT AGENCY, EX REL. ALENE
LEWIS CREWS, APPELLEE, ALENE LEWIS CREWS, INTERVENOR-
APPELLANT v. FREDDIE PARKER, AKA FREDERICK EDGE PARKER, JR.,
APPELLEE

No. 865DC158

(Filed 5 August 1986)

Social Security and Public Welfare § 2— acceptance of public assistance—all rights
to child support assigned to State

The trial court properly denied a motion to intervene to seek retroactive
child support filed by the child's grandmother, with whom the child had lived
since shortly after her birth, where the Pender County Child Support Enforce-
ment Agency and the child's father had entered into a proposed settlement
which included public assistance arrearages and the grandmother had accepted
AFDC benefits on behalf of the minor child. By accepting public assistance, the
recipient assigned all rights to support owed for the child to the State, in-
cluding claims which had accrued when the assignment was made. N.C.G.S.
§ 110-137, N.C.G.S. § 1A-1, Rule 24(a)(2).

APPEAL by intervenor from *Morris-Goodson, Judge.* Order
entered 12 December 1985 in District Court, PENDER County.
Heard in the Court of Appeals 6 June 1986.

The State of North Carolina, through its Child Support En-
forcement Agency in Pender County, brought this action against
the defendant, Freddie Parker, by filing a civil complaint on 6
February 1985. Plaintiff, pursuant to Article 9 of Chapter 110 and
Article 3 of Chapter 49 of the North Carolina General Statutes,
sought: (1) an adjudication that defendant is the father of Cheryl
Michele Crews; (2) an order requiring defendant to provide sup-
port and maintenance for said child; and (3) an order requiring
defendant to reimburse the State for all past public assistance
provided for the minor child.

The minor child was born 5 April 1968. Since shortly after
her birth she has resided with her grandmother, Alene Lewis
Crews. Neither the child's mother nor father have provided sup-
port for her. In late 1981, after the death of her husband, Alene
Crews made application for and received public assistance,
through the Aid for Dependent Children (AFDC) program, on
behalf of the minor child.

Plaintiff and defendant Parker entered into a proposed settlement and presented a consent order to the District Court for approval. The proposed order provided for defendant Parker to acknowledge paternity of Cheryl Crews, pay $125.00 per month for her support, and pay $900.00 in settlement of public assistance arrearages. The actual arrearages were calculated at $2,265.40 as of 1 July 1985.

Alene Lewis Crews filed a motion to be permitted to intervene in the action. In her accompanying complaint, she alleged that plaintiff had failed to assist her in obtaining retroactive child support from defendant Parker, and she requested that plaintiff be enjoined from entering into any settlement with Parker which did not take into account her claim for retroactive support. She requested further that plaintiff be required to assist her in recovering retroactive support from Parker.

The trial court denied the motion to intervene, finding and concluding that under applicable federal and state laws Alene Crews had assigned to the North Carolina Department of Human Resources all rights which she may have had to child support owed for the minor child by defendant. Alene Crews appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Clifton H. Duke, for the State.*

*Legal Services of the Lower Cape Fear, by Curtis Brian Venable and Mason Hogan, for intervenor appellant.*

*Harold L. Pollock for plaintiff appellee.*

MARTIN, Judge.

Assigning error to the denial of her motion to intervene, appellant contends that she is entitled to intervene as a matter of right pursuant to G.S. 1A-1, Rule 24(a)(2) because she has an interest in the subject matter of the action between plaintiff and Freddie Parker. Thus, the sole question on appeal is whether appellant, by accepting AFDC benefits, assigned her interest in the subject matter of the suit, i.e., her claim against Parker for child support, to the State. For the reasons which follow, we affirm the order of the trial court.

In order to be eligible for AFDC, federal regulations require the recipient

to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed.

42 U.S.C. § 602(a)(26)(A). "Reading of the plain language of the statute shows that it refers to '*rights* . . . which have accrued,' not to actual support moneys owed at the time of assignment (emphasis supplied)." *Matter of Stovall,* 721 F. 2d 1133, 1135 (7th Cir. 1983).

Congress intended the total support obligation to be assigned to the states. Section 602(a)(26) was designed to 'require that a mother, as a condition of eligibility for welfare, assign her right to support payments to the State and cooperate in . . . obtaining any money or property due the family . . . .' In addition, 'the assignment of support rights will continue as long as the family continues to receive assistance.' S.REP No. 93-1356, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S. CODE CONG. & ADM. NEWS 8133, 8152-53. This continuing right covers both arrearages accrued at the time of assignment and support payments which become due after the assignment.

*Id.*

The federal regulations provide that "[t]he support rights assigned to the State under section 602(a)(26) . . . constitute an obligation owed to such State by the individual responsible for providing such support." 42 U.S.C. § 656(a)(1). The obligation owed is either an "amount specified in a court order which covers the assigned support rights," or where there is no previous court order, "an amount determined by the State." 42 U.S.C. § 656(a)(2)(A) and (B). The State is under an obligation to establish paternity of the child and to secure support for the child. 42 U.S.C. § 654(4). The State is also required to collect any child support monies and offset them against the amounts paid out in public assistance. 42 U.S.C § 657(b)(1)-(4). Upon termination of the assistance, the State may, for a limited time, collect the obligor's support payments and, to a limited extent, retain payments to reimburse it for public assistance arrearages. 42 U.S.C § 657(c).

The Social Security Regulations require that the State utilize an assignment "substantially identical" to that required by Section 602(a)(26). 45 C.F.R. § 232.11(b). North Carolina provides in G.S. 110-137 the following:

> By accepting public assistance for or on behalf of a dependent child or children, the recipient shall be deemed to have made an assignment to the State or to the county from which such assistance was received of the right to any child support owed for the child or children up to the amount of public assistance paid. The State or county shall be subrogated to the right of the child or children or the person having custody to initiate a support action under this Article and to recover any payments ordered by the court of this or any other state.

The payment of public assistance creates a debt owing to the State by the responsible parent. G.S. 110-135. The county has the authority and duty to institute paternity proceedings against putative fathers; to bring an action against the putative father for the maintenance of the child; and to recover amounts paid by the county in support of the child. G.S. 110-128, -135, -138, and -139; *Settle ex rel. Sullivan v. Beasley*, 309 N.C. 616, 308 S.E. 2d 288 (1983); *Carrington v. Townes*, 53 N.C. App. 649, 281 S.E. 2d 765 (1981), modified, 306 N.C. 333, 293 S.E. 2d 95 (1982), U.S. *cert. denied*, 459 U.S. 1113, 74 L.Ed. 2d 965, 103 S.Ct. 745 (1983). In these proceedings, the county is the real party in interest. *Settle ex rel. Sullivan; Carrington*. Article 9 of Chapter 110 also provides that "[n]othing in this Article is intended to conflict with any provision of federal law or to result in the loss of federal funds." G.S. 110-140.

We hold that, based on federal and State law, by accepting public assistance, the recipient assigns *all* rights to support owed for the child to the State, including claims which had accrued when the assignment was made. Once public assistance payments terminate, any rights to support assigned to the State revert back to the recipient. Therefore, we conclude that the trial court properly denied appellant's motion to intervene to seek retroactive child support.

Affirmed.

Judges PHILLIPS and PARKER concur.